489 S.E.2d 635

**The STATE, Respondent,**

v.

**Clarence E. ALDRET, Appellant.**

**No. 2575.**

Court of Appeals of South Carolina.

Heard March 5, 1997.

Decided April 23, 1997.

Rehearing Denied Sept. 12, 1997.

322

Stephen P. Groves, Charleston;  and Reese I. Joye, Jr. and John L. Drennan, of N. Charleston, for appellant.

Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, and Assistant Deputy Attorney General Salley W. Elliott, Columbia;  and Solicotor Ralph J. Wilson, Conway, for respondent.

CURETON, Judge.

Appellant, Clarence Aldret was tried and found guilty by a jury of second offense driving under the influence.  The trial court denied Aldret's motion for a new trial based upon jury misconduct.  The court sentenced Aldret to imprisonment for a term of one year and imposed a fine of $5,000 suspended upon the service of four months imprisonment or payment of a $1,000 fine and probation.

On appeal, Aldret claims the trial court erred (1) in failing to grant his motion for a new trial on the ground of jury misconduct because of premature deliberations by the jury, and (2) as a matter of law by failing to admonish the jury against premature deliberations in a proper and timely manner.  We affirm in part, reverse in part and remand.

## I.  Facts

At the commencement of the trial, a jury panel was selected and Dr. Martin Laskey was chosen as alternate juror.  Following the jury selection, the court considered some unrelated matters during which time the jury was removed from the courtroom.  Thereafter, there was an intervening lunch break.

The trial began after lunch with brief introductory remarks by the court and the swearing-in of the jury panel.  The State presented a total of four witnesses.  During direct examina-

tion of the second witness, the jury was excused to the jury room with the court's statement "[t]ake the jury out." An *in camera* discussion took place concerning statements made by Aldret. The jury momentarily returned to the courtroom until an issue arose concerning a video tape. At that point, the court excused the jury for the evening with the admonition: "Don't talk about this case, don't talk to anybody, don't let anybody talk to you. Be back in your jury room at 9:30 in the morning."

The next morning the court made the following statements to the jury:

Before we begin, let me ask if during the recess anybody has talked to you or tried to talk to you about the case? (No response).

Has anything at all happened which might affect your ability to be fair to the State and the Defense in this case? (No response).

Testimony of the second witness resumed. At the end of his testimony, the jury was excused to the jury room for a recess with the court simply instructing the jury to "step on back in your room." The jury returned and heard the testimony of the State's last two witnesses. The court then sent the jury to the jury room and heard defense motions.

After the court heard the defense motions and reassembled the jury, Aldret presented his case. The State offered no reply. The court then excused the jury for lunch with the following exhortation: "While you are at lunch, as I always do, don't talk about the case among yourselves, don't let anybody talk to you about the case. Be back in your room at 2:30 and we'll start back at that hour."

After lunch, the trial resumed with closing arguments and the jury charge. The alternate juror, Dr. Laskey, was excused from service. After the jury returned a guilty verdict, Aldret's counsel indicated he had a new trial motion, which he desired to argue at a later time.

The jury was reassembled the following Monday. At that time, Aldret's counsel argued his new trial motion and presented Dr. Laskey's affidavit which stated the jury engaged in discussions regarding the case prior to the time the case was

submitted for deliberation. He also stated he gave the jury his advice on certain matters involved in the case. The court refused to read and/or consider the affidavit. The court refused the new trial motion based upon premature jury discussions concluding the law prohibited the use of Dr. Laskey's affidavit to impeach the jury's verdict. The court questioned the jurors individually concerning a newspaper article that one of the jurors brought into the jury room on the second day of trial, and found the article had no prejudicial effect on the jury.

## II. Law and Analysis

### A. Admissibility of Laskey's Affidavit

Aldret argues the trial court erred in failing to consider Laskey's affidavit because Laskey was an alternate juror and he should not have been considered a juror for purposes of impeaching the jury verdict. He contends the jury improperly sought expert advice from Laskey on medical and scientific issues during preliminary discussions.[1] Aldret also asserts the court failed to ask the jurors during the post trial hearing about premature deliberations, and, therefore, failed to determine whether Aldret was unduly prejudiced by premature discussions.

The State contends that the trial court correctly excluded Laskey's affidavit because it would have served to impeach the jury's verdict or show misconduct intrinsic to the jury's deliberative process. Alternatively, the State argues that even if the affidavit is considered, it fails to show that juror misconduct occurred. Additionally, the State asserts there is no reversible error because Aldret has not shown actual prejudice.

---

1. According to Laskey's affidavit, among the things he and the jury talked about were (1) what was Zantac, why was Aldret taking it, and Laskey's explanation that Tagamet and Zantac were the same; (2) that there were ways to fool the breathalizer machine; (3) that there are medicines that will mask alcohol for breathalizer machines; (4) Laskey's explanation of demonstrations of the breathalizer machine done by a trooper at his medical school; (5) "what was Aldret doing with a liquor bottle in his vehicle if he wasn't drinking it;" and (6) the importance of the "simulator solution" for the breathalizer machine.

In *State v. Hunter,* 320 S.C. 85, 88, 463 S.E.2d 314 (1995), our Supreme Court held that as a general rule:

[J]uror testimony may not be the basis for impeaching a jury verdict. Normally, courts should not intrude into the privacy of the jury room to scrutinize how jurors reached their verdict. However, other jurisdictions have made exceptions based on the nature of the alleged misconduct. When an extraneous influence is alleged, juror testimony can normally be used. If the alleged misconduct is internal, courts are more strict. Normally, juror testimony involving internal misconduct is competent only when necessary to ensure due process, i.e. fundamental fairness. (Citations omitted).

■ The threshold question for our review is whether Laskey was a juror for purposes of the verdict impeachment rule. We hold that until discharged an alternate juror is as much a juror as one who ultimately participates in the verdict. S.C.Code Ann. § 14–7–1340 (1976) provides that until discharged, alternate jurors have the same responsibilities as other jurors. Aldret has not convinced us that alternate jurors should be treated differently from any other jurors. *See Rietze v. Williams,* 458 S.W.2d 613 (Ky.1970); *Wingate v. Lester E. Cox Medical Center,* 853 S.W.2d 912 (Mo.1993) (en banc); *State v. Palmigiano,* 115 R.I. 166, 341 A.2d 742 (1975); *Cf. State v. McIntire,* 221 S.C. 504, 516, 71 S.E.2d 410, 416 (1952) (rejecting appellant's claim S.C.Code Ann. § 14–7–1340 was unconstitutional because an alternate juror "while not participating in the consideration or rendition of the verdict, might be of such character as to exert a persuasive influence on the jury panel prior to his discharge.").

■ The next question presented is whether the trial court erred in determining, as a matter of law, that Laskey's affidavit was inadmissible. Since Laskey was a juror for purposes of the impeachment rule, the alleged conduct falls under the classification of internal misconduct. Thus, the issue is whether Aldret's claim is of such a nature that to deny an inquiry into it is a denial of fundamental fairness. *State v. Hunter,* 463 S.E.2d at 316. Our Supreme Court has stated many times that a jury should not begin discussing a case or issues in the case until the attorneys have presented all

evidence, made closing arguments, and the judge has charged the applicable law. *State v. Pierce,* 289 S.C. 430, 346 S.E.2d 707 (1986). The reasoning behind the prohibition against premature jury deliberations is best set out in *State v. McGuire,* 272 S.C. 547, 253 S.E.2d 103 (1979). There the court stated "[t]he human mind is constituted such that when a juror declares himself, touching any controversy, he is apt to stand by his utterances to the other jurors in defiance of evidence. A fair trial is more likely if each juror keeps his own counsel until the appropriate time for deliberation." *Id.* at 552, 253 S.E.2d at 105. In *Pierce,* 289 S.C. 430, 346 S.E.2d 707, and *State v. Joyner,* 289 S.C. 436, 346 S.E.2d 711 (1986) the court indicated that jury instructions which invite premature jury deliberations are inherently prejudicial and require reversal. These decisions inevitably lead to the conclusion that premature jury deliberations affect the fundamental fairness of a trial. Thus, the trial court erred in failing to consider Laskey's affidavit.

## B. Showing of Jury Misconduct

Finally, as to the State's contention that the record fails to show jury misconduct, and that in any event, Aldret was not prejudiced by the misconduct, we disagree. As to Aldret's failure to show misconduct, we hold he did all he could in view of the trial court's refusal to permit evidence of misconduct with regard to premature deliberations. A litigant is not required to persist on a point that has been fully ruled upon by the court. *Dunn v. Charleston Coca–Cola Bottling Co.,* 311 S.C. 43, 426 S.E.2d 756 (1993). Moreover, under the reasoning of the cases of *State v. Joyner* and *State v. Pierce,* premature deliberations are presumed inherently prejudicial to a defendant.

## C. Failure of the Court to Admonish Jury Not to Prematurely Deliberate the Case

With respect to the jury instructions, Aldret maintains the trial court failed to adequately admonish the jury during the trial concerning premature deliberations and such failure requires reversal of his convictions. On the other hand, the State asserts the instructions were adequate. The State further asserts that in any event, Aldret waived this claim by

failing to timely object during trial to the court's failure to properly instruct the jury on this issue.

Jurors should be admonished not to discuss the case with anyone, including each other, prior to submission of the case. *State v. Hoffman,* 312 S.C. 386, 440 S.E.2d 869 (1994); *Gallman v. State,* 307 S.C. 273, 276, 414 S.E.2d 780, 782 (1992). "The rule is well settled that jurors should not, prior to the submission of the case to them, converse with outsiders or among themselves on any subject connected with the trial, or form or express any opinion thereabout; and that the jurors should be so admonished when they are permitted to separate during the trial." *State v. Parker,* 255 S.C. 359, 361, 179 S.E.2d 31, 32 (1971).

We agree with the State that Aldret may not complain of the inadequacy of the instructions because he failed to object to the lack of such instructions during trial. In *State v. Neeley,* 271 S.C. 33, 244 S.E.2d 522 (1978), our Supreme Court held that appellant's counsel's failure to object to the court's failure to admonish the jury that they were not to deliberate until all of the evidence had been introduced precluded consideration of the issue on appeal. *See also State v. Harris,* 315 N.C. 556, 340 S.E.2d 383, 389 (1986) (even where an instruction is statutorily mandated, the defendant must object to any failure of the trial court to properly instruct the jury). Here, as in *Neeley,* there is no indication Aldret ever made this objection known to the trial court. We, therefore, reject Aldret's claim that the trial court's failure to admonish the jury against premature deliberations is reversible error.

### III. Conclusion

We conclude that pursuant to *State v. Neeley,* Aldret may not complain that the trial court erred as a matter of law in failing to admonish the jury against premature deliberations because he failed to make a timely objection to the adequacy of the court's admonishments. We further conclude, however, that the trial court erred in failing to consider Laskey's affidavit and in not questioning the jurors to determine if their verdict was influenced by premature deliberations. In our original opinion we held it inappropriate under the circumstances of this case to remand for a determination of whether

the jury's verdict was influenced by the alleged premature deliberations. However, during rehearing of this case, the State continued to insist that a remand is appropriate. We therefore remand this case to the trial court for a determination of whether there were premature deliberations, and if so, whether those deliberations affected the jury's verdict. Nevertheless, should the trial court find it impractical to carry out the mandate just noted, then and in that event, the trial court shall grant a new trial.

**AFFIRMED IN PART, REVERSED IN PART AND RE-MANDED.**

HEARN and ANDERSON, JJ., concur.